James C. JACKSON, Plaintiff,

v.

UNIVERSITY OF NEW HAVEN,
Deborah Chin Defendants.

No. CIV.A.3:00CV297(CFD).

United States District Court,
D. Connecticut.

Oct. 30, 2002.

Philip H. Schnabel, Hartford, CT, Michael H. Sussman, Stephen Bergstein, Christopher D. Watkins, Goshen, NY, for Plaintiff.

Peter J. Lefeber, Alisa T. Rulnick, Wiggin & Dana, New Haven, CT, Stephen B. Harris, Lori Rittman Clark, Wiggin & Dana, Hartford, CT, for Defendants.

### *RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

DRONEY, District Judge.

#### I. *Introduction*

James C. Jackson ("Jackson") brought this action against the University of New Haven ("UNH") and Deborah Chin, the Athletic Director of UNH, alleging racial discrimination in hiring in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000d (Title VI), and 42 U.S.C. § 2000e–5 (Title VII).[1] Jackson seeks damages as well as equitable relief, costs, and attorney's fees.

Pending before the Court is Defendants' Motion for Summary Judgment [Doc. # 14]. For the following reasons, the motion is GRANTED.

#### II. *Facts*

In February 1999 the head football coach at the University of New Haven ("UNH") left to take a position with the Cleveland Browns of the National Football League. This dispute arises out of the ensuing search for a new head coach at UNH.

Beginning in early February of 1999, UNH posted the head coach position both internally and with the "NCAA market," an online professional publication for university and college athletics. The postings for the head coaching position listed the following requirements:

> A bachelors degree is required, master's degree preferred. *Successful collegiate coaching experience required.* Experience in recruiting, game coaching and knowledge of NCAA rules and regulations is essential.

Def. Local R. 9(c)1 statement ¶ 6 (emphasis added). Further, the duties were listed as follows:

> Implement and manage all aspects of a national caliber Division II football program in accordance with NCAA and university regulations. Areas of responsibility include, but are not limited to coaching, recruiting qualified student athletes, budget management, scheduling, hiring and supervising coaching staff, academically monitoring student-athletes, and promotions and fund-raising.

Def. Local R. 9(c)1 statement. ¶ 7.

After receiving 36 applications, UNH's Search Committee, which had been estab-

---

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3).

Personal jurisdiction is not disputed.

lished to select a new head coach, decided to interview six applicants-all of whom had college coaching experience and are Caucasian. Jackson, an African–American, was not among the six applicants interviewed. Jackson had no college experience, but had been a professional minor league football coach, earned several "coach of the year" honors as such a coach, and was inducted into the minor league football hall of fame. The defendants assert that they decided not to interview Jackson because he lacked the requisite collegiate coaching experience. From the six applicants interviewed, the Search Committee ultimately selected Darren Rizzi, who had been an assistant coach at UNH for four years, to fill the position of head coach.

At the heart of this dispute lies the "collegiate coaching experience" requirement. The parties are in agreement that the posted job qualifications included that requirement and that all of the applicants selected for interviews possessed such experience. However, the parties differ markedly in their characterizations of that prior experience requirement. The defendants maintain that prior NCAA[2] coaching experience was essential to ensure the selection of a candidate sufficiently well-versed in NCAA rules and regulations to both pass the NCAA's annual tests on such regulations and manage the UNH football team successfully. Jackson, however, asserts that the requirement of previous collegiate coaching experience was not necessary to ensure familiarity with NCAA rules and regulations and that it served to exclude otherwise qualified minority applicants, such as himself.

Jackson asserts that the requirement that applicants have prior college coaching experience amounts to discrimination in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000d (Title VI), and 42 U.S.C. § 2000e–5 (Title VII).[3] Jackson asserts all three of these statutory causes of action against defendant UNH. However, only the § 1981 claim is asserted against defendant Chin.[4]

Jackson appears to base his complaint on both the "disparate treatment" and "disparate impact" theories of recovery in that he alleges both that the challenged qualification had a discriminatory effect upon African Americans (disparate impact) and that the defendants intentionally dis-

---

**2.** The National Collegiate Athletic Association.

**3.** Title 42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory ... to the full and equal benefit of all laws." Title 42 U.S.C. § 2000d (Title VI) provides that "No person in the United States shall, on the ground of race ... be excluded from participation in, be denied any benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." Here, the parties do not dispute that defendant UNH is an entity receiving federal funds that is subject to the provisions of Title VI. Finally, Title VII prohibits certain "Unlawful employment practices," which include "fail[ing] or refus[ing] to hire or discharge any individual, or otherwise to discriminate against any individ-

ual ... because of such individual's race...." 42 U.S.C. § 2000e–2.

**4.** Even if the plaintiff had asserted his Title VI and VII claims against defendant Chin, she would not have been a proper defendant under either title of the Civil Rights Act. See Weeks v. New York, 273 F.3d 76, 81 fn. 1 (2d Cir.2001) (noting that "individuals are not proper Title VII defendants.") (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1314 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)); Bayon v. State Univ. of New York at Buffalo, No. 98–CV–0578E(SR), 2001 WL 135817, at *2 (W.D.N.Y. Feb.15, 2001) ("plaintiff's Title VI claims against the individual defendants in their individual capacities fail because this act does not provide for individual liability.")

criminated against him based on his race (disparate treatment).

### III. *Summary Judgment Standard*

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.' " *Miner v. City of Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

Finally, the Second Circuit has declared that a "trial court must be especially cautious in deciding whether to grant [summary judgment] in a discrimination case, because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir.1999) (citing *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir.1996) and *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1224 (2d Cir. 1994)). *See also Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997)("Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.") (citations and internal quotations marks omitted). Nevertheless, even when intent is at issue, "a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Id.*

### IV. *Analysis*

#### A. *Disparate Treatment Claim*

As mentioned, Jackson alleges that he has been discriminated against in violation of 42 U.S.C. §§ 1981, 2000d (Title VI), and 2000e–5 (Title VII). To the extent that he claims that he has been discriminated against intentionally, the U.S. Supreme Court has developed a "burden shifting framework" for claims brought under Title VII alleging "disparate treatment." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Courts have subsequently applied the same burden-shifting framework articulated in *McDonnell Douglas* to disparate treatment claims arising under 42 U.S.C. §§ 1981 and 2000d (Title VI). *See Hudson v. International Business Machines Corp.*, 620 F.2d 351, 354 (2d Cir. 1980), *cert. denied* 449 U.S. 1066, 101 S.Ct.

794, 66 L.Ed.2d 611 (1980) (holding that *McDonnell Douglas*'s burden-shifting framework applies to § 1981 claims of race discrimination). *See Fuller v. Rayburn*, 161 F.3d 516, 518 (8th Cir.1998) (applying *McDonnell Douglas* analysis to disparate treatment claims under Title VI); *McKie v. New York University*, No. 94 Civ. 8610(LMM), 2000 WL 1521200, at *3 fn. 1 (S.D.N.Y. Oct.13, 2000)(same). Thus, because the test is the same under each of the three statutes, this Court will apply the same *McDonnell Douglas* burden-shifting framework to the plaintiff's disparate treatment claim.

Under the burden-shifting framework of *McDonnell Douglas,* a plaintiff alleging disparate treatment based on race and national origin must first establish a prima facie case of discrimination. 411 U.S. at 802, 93 S.Ct. 1817.[5] The burden then shifts to the defendant to offer a legitimate, nondiscriminatory rationale for its actions. *See James v. New York Racing Ass'n,* 233 F.3d 149, 154 (2d Cir.2000). Finally, if the defendant does offer a non-discriminatory reason for its decision, the burden again shifts to the plaintiff to show that the defendant's stated reason is a mere pretext for discrimination. *See Id.* (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–10, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). In some circumstances, under *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105, (2000), after the plaintiff offers evidence to show that the defendant's asserted non-discriminatory reason for the hiring is pretextual, the evidence that established the prima facie case will be sufficient to survive a summary judgment motion. 530 U.S. at 148, 120 S.Ct. 2097 ("a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). Here, the burden-shifting framework does not reach this stage because Jackson has failed to establish a prima facie case.

To establish a prima facie case of discrimination, a plaintiff must show (1) membership in a protected class, (2) qualification for the employment, (3) an adverse employment decision, and (4) circumstances that give rise to an inference of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. *See also Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000). Courts have acknowledged this framework is "not inflexible," but that "in establishing a prima facie case the plaintiff must show that [he] applied for an available position for which [he] was qualified, but was rejected under circumstances that give rise to an inference of discrimination." *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 710 (2d Cir.1998) (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)) (internal quotation marks omitted).

█ The parties do not dispute that Jackson is a member of a protected class. Nor do they dispute that the defendants' decision to hire Rizzi instead of Jackson was adverse to him. However, the parties disagree as to whether Jackson meets the second prong of *McDonnell Douglas:* qualification for the position. In their Mo-

---

**5.** The *McDonnell Douglas* burden-shifting framework is only necessary when the plaintiff has failed to offer direct evidence of discriminatory intent. *See Johnson v. New York,* 49 F.3d 75, 78 (2d Cir.1995)("The *McDonnell Douglas* framework, which guided the district court's analysis, is intended to assist the fact-finding process when the plaintiff is unable to present direct evidence of discrimination."). Here, the plaintiff has not offered any evidence of discriminatory intent; thus, the *McDonnell Douglas* inquiry is appropriate.

tion for Summary Judgment, the defendants assert that Jackson was not qualified because he failed to meet an express condition of the employment, that he did not have prior NCAA coaching experience. Although he maintains that he is qualified, Jackson does not dispute that prior collegiate coaching was an expressly listed qualification for the UNH head coach position, nor does he contend that he had any prior experience coaching in college. However, Jackson's subjective determination that he is qualified for the position is not enough to carry his burden of making out a prima facie case. The Second Circuit, in the context of an age discrimination suit, elaborated on the definition of the "qualification" requirement of the *McDonnell Douglas* prima facie case in *Thornley v. Penton Publ'g*, 104 F.3d 26 (2d Cir.1997): "As we understand this element, being 'qualified' refers to the criteria the employer has specified for the position." 104 F.3d at 29. The Court further explained that broad deference should be afforded to employers in selecting hiring criteria: "Absent a showing by the plaintiff that the employer's demands were made in bad faith ... an employer ... is not compelled to submit the reasonableness of its employment criteria to the assessment of either judge or jury." *Id.* (citations omitted). *See also Gonzalez v. Connecticut*, 151 F.Supp.2d 174, 180–81 (D.Conn.2001) (applying *Thornley* to a Title VII racial discrimination case).

Consistent with this understanding, courts have afforded employers considerable latitude in selecting employment qualifications. For example, in *Schaffner v. Glencoe Park Dist.*, 256 F.3d 616 (7th Cir. 2001) the Seventh Circuit considered the "qualification prong" of the *McDonnell Douglas* burden-shifting framework in the context of an ADEA claim. 256 F.3d at 620. There the plaintiff was denied a promotion to the position of "program manager" for park recreational programs—a position that listed as one of its requirements one of several types of bachelor's degrees. The court held that the plaintiff failed to meet the qualification prong of the *McDonnell Douglas* test because she did not possess any of the specified degrees, and was therefore not qualified for the position. In response to the plaintiff's argument that "her extensive teaching experience, in combination with her educational background and her experience at the Park District, ought to [have been] considered the equivalent of one of the specified bachelor's degrees," the court reasoned that:

> We need not decide whether it is reasonable for an employer to place value on the actual receipt of a particular degree, irrespective of the applicant's experience, and we will not presume to mandate that the Park District equate [the plaintiff's] experience with an actual degree in Education. What the qualifications for a position are, even if those qualifications change, is a business decision, one courts should not interfere with. We do not tell employers what the requirements for a job must be.

*Schaffner*, 256 F.3d at 620–21 (citations and internal quotation marks omitted). Here, as in *Schaffner*, deference must be given the defendants in selecting college coaching experience as a qualification for the position of head coach. Nor is it appropriate for this Court to mandate that the defendants equate Jackson's experience in coaching minor league football with college coaching experience. *See also Bennett v. Roberts*, 295 F.3d 687, 695–96 (7th Cir.2002)(holding that the plaintiff, who was seeking a teaching position, had not met the "qualification" prong of the prima facie case under Title VII despite holding a teaching certificate and a master's degree, when she had not alleged that

she met the specific criteria in the job postings); *Matos v. Bristol Bd. of Educ.,* 204 F.Supp.2d 375, 380–81 (D.Conn.2002)(finding that the plaintiff did not meet the qualification prong of prima facie racial discrimination case when stated job listing under the collective bargaining agreement was for "most senior qualified applicant" and the plaintiff was not the most senior of qualified applicant pool); *Kratz v. College to Staten Island,* No. Civ.A 96–CV–0680DGT, 2000 WL 516888, at *2 (E.D.N.Y. Mar.15, 2000)(reasoning that the plaintiff had not made out a prima facie case under Title VII because "the second prong [regarding qualification] requires [the plaintiff] to meet the posted job qualifications").

There are, however, limits to an employer's latitude in selecting hiring criteria. For example, in *Howley v. Town of Stratford,* 217 F.3d 141 (2d Cir.2000) the Second Circuit rejected the defendant's argument that the plaintiff, a female firefighter, was "ineligible" for a promotion to assistant-chief because she did not have the required four years of line-officer experience. 217 F.3d at 151. The Court acknowledged that the town was "entitled to set its own criteria" for the position, but held that because the Town had "relaxed" that standard for two male firefighters, the plaintiff's lack of experience should not have resulted in summary judgment for the defendant. *Id.* at 151–52.

Here there is no claim, and Jackson has put forth no evidence, that the defendants failed to apply the prior college coaching experience requirement uniformly to African–Americans and others. Absent any such showing, the defendants are entitled to the deference in selecting hiring criteria recognized in *Thornley.* Moreover, the prior college coaching experience requirement at issue here appears reasonable on its face. There is an obvious and significant nexus between the defendants' need to select a head coach well-versed in NCAA regulations and the requirement that candidates have actual experience in college coaching. Thus, Jackson has failed to make out a prima facie case of disparate treatment in that he has failed to demonstrate that he was qualified for the position of head coach. As Jackson has failed to meet his burden, this Court grants summary judgment as to his disparate treatment claim brought pursuant to 42 U.S.C. §§ 1981, 2000d (Title VI), and 2000e–5 (Title VII).

B. *Disparate Impact*

■ Unlike disparate treatment, in asserting a claim of disparate impact under Title VII a plaintiff need not allege that the discrimination was intentional. *Griggs v. Duke Power Co.,* 401 U.S. 424, 430–32, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) ("[G]ood intent or absence of discriminatory intent does not redeem employment procedures or testing mechanisms that operate as 'built in head winds' "). It is enough that a facially-neutral policy, such as the prior college coaching experience requirement at issue here, be shown to have an adverse impact on a protected group. *Id.* at 431, 91 S.Ct. 849 (noting that Title VII "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation").

However, unlike disparate treatment, the disparate impact theory of recovery is available only for claims brought pursuant to Title VII, and not for claims under 42 U.S.C. § 1981 or § 2000(d)(Title VI). The U.S. Supreme Court has held that these latter provisions can only be violated by intentional discrimination and that they therefore cannot support a "disparate impact" claim. *See Alexander v. Sandoval,* 532 U.S. 275, 280–85, 121 S.Ct. 1511, 149

L.Ed.2d 517 (2001)(holding that § 2000d (Title VI) proscribes only intentional discrimination and therefore does not support a disparate impact theory of recovery)(citing *Regents of Univ. of Cal. v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978)); [6] *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982)(holding that § 1981 is only violated by a showing of intentional discrimination). Thus, to the extent that Jackson alleges a disparate impact theory of recovery, his claim is cognizable only under Title VII.

Disparate impact cases, like disparate treatment cases, are governed by a "burden-shifting" framework. The Second Circuit reviewed the disparate impact burden-shifting framework in *NAACP, Inc. v. Town of East Haven,* 70 F.3d 219, 225 (2d Cir.1995):

> "[A] plaintiff may establish a prima facie case of disparate impact by showing that use of the test causes the selection of applicants ... in a racial pattern that significantly differs from that of the pool of applicants." *Bridgeport Guardians, Inc. v. City of Bridgeport,* 933 F.2d 1140, 1146 (2d Cir.1991), *cert. denied,* 502 U.S. 924, 112 S.Ct. 337, 116 L.Ed.2d 277 (1991). Such a showing can be established through the use of statistical evidence which discloses a disparity so great that it cannot reasonably be attributed to chance. *See Hazelwood Sch. Dist. v. United States,* 433 U.S. 299, 307–08, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977). To establish a prima facie case, the statistical disparity must be sufficiently substantial to raise an inference of causation. *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 994–95, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). After a prima facie case is established, the employer has the burden of coming forward with evidence to show that the test has " 'a manifest relationship to the employment in question.' " *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (quoting *Griggs v. Duke Power Co.,* 401 U.S. 424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971)). If the employer can make such a showing, the plaintiff may nonetheless prevail if he can suggest alternative tests or selection methods that would meet the employer's legitimate needs while reducing the racially disparate impact of the employer's practices. *Bridgeport Guardians, Inc.,* 933 F.2d at 1147.

*Id.* at 225. *See also Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147, 160–61 (2d Cir.2001). As the Court noted in *East Haven,* this framework was statutorily enacted by the Civil Rights Act of 1991. *Id.* at 225 fn. 6. *See also* 42 U.S.C. § 2000e–2(k).

Here, as in the disparate treatment context, Jackson has failed to meet his burden of setting forth a prima facie case of disparate treatment. In making out a prima facie case for disparate impact under Title VII, the plaintiff bears the burden of demonstrating that a specific policy or practice of the defendant has had a disproportionately negative impact on the plaintiff's protected class. 42 U.S.C. Section 2000e–2(k)(1)(A)[7]; *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 45

---

**6.** The Court in *Alexander* also held that "disparate impact regulations" enacted pursuant to 42 U.S.C. § 2000d–1 (§ 602 of Title VI) do not give rise to a private cause of action. 532 U.S. at 285–86, 121 S.Ct. 1511. At any rate, the plaintiff here does not plead a violation of any regulation enacted pursuant to § 2000d–

**1.** His Title VI claim is based solely on § 2000d, which provides a private cause of action for intentional discrimination only. *Id.* at 279–80, 121 S.Ct. 1511.

**7.** The 1991 Civil Rights Act sets forth the burden of proof required in disparate impact

L.Ed.2d 280 (1975)(superceded by statute on other grounds); *Griggs,* 401 U.S. at 432, 91 S.Ct. 849. "To make this showing, a plaintiff must (1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two." *Robinson,* 267 F.3d at 160 (citing 42 U.S.C. § 2000e–2(k)(1)(A)(I)). *See also Brown v. Coach Stores, Inc.,* 163 F.3d 706, 712 (2d Cir. 1998) ("plaintiff must show that a facially neutral employment policy or practice has a significant disparate impact"). Here, Jackson alleges that the defendants' facially neutral hiring criteria (requiring prior college coaching experience), had a discriminatory impact on African–Americans. Specifically, Jackson asserts that because African–Americans have historically been under-represented in the ranks of NCAA coaches this requirement disproportionately excludes African–Americans from consideration.

Statistics are often an important component of a disparate impact claim. *See Robinson,* 267 F.3d at 160 ("[S]tatistical proof almost always occupies center stage in a prima facie showing of a disparate impact claim"); *Smith v. Xerox Corp.,* 196 F.3d 358, 365 (2d Cir.1999) (holding that after the plaintiffs identify a specific employment practice "[p]laintiffs then must present statistical evidence of a kind and degree sufficient to show the practice in question has caused the exclusion" of protected groups) (citations omitted).

The defendants here attack the sufficiency of the plaintiff's statistics. They argue that the plaintiff has not offered any statistical evidence to indicate a causal link between UNH's prior college coaching experience requirement and its negative impact on African–Americans. However, in its memorandum in opposition to the defendants' motion for summary judgment,

cases at 42 U.S.C. § 2000e–2(k), which provides in relevant part:

(k) Burden of proof in disparate impact cases

(1)(A) An unlawful employment practice based on disparate impact is established under this chapter only if-

(i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity; or

(ii) the complaining party makes the demonstration described in subparagraph (C) with respect to an alternative employment practice and the respondent refuses to adopt such alternative employment practice.

. . .

(C) The demonstration referred to by subparagraph (A)(ii) shall be in accordance with the law as it existed on June 4, 1989, with respect to the concept of "alternative employment practice."

Even when the disparate impact case is argued on the basis of 42 U.S.C.2000e–2(k)(1)(A)(ii), the burden is still on the plaintiff to demonstrate that the challenged employment practice has an adverse impact on a protected group. In *Price v. City of Chicago,* 251 F.3d 656 (7th Cir.2001), the Title VII plaintiff argued that the 1991 Amendments "eliminated the requirement that the challenged practice has a disparate impact" and that it was enough that "an alternative employment practice with a lesser adverse impact exists and that the employer has failed to adopt it." 251 F.3d at 659. The Seventh Circuit rejected this argument, reasoning that the 1991 Amendments merely provided that "a plaintiff's demonstration shall be in accordance with the law as it existed prior to the Supreme Court's decision in *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989)." *Id.* at 660, 109 S.Ct. 2115. Case law prior to *Wards Cove,* the Court continued, "made it clear that an employer has no duty to justify its use of a particular employment practice *unless* the plaintiff establishes that the practice has a disparate impact." *Id.* (emphasis in original).

Jackson does offer statistics suggesting a causal link between the prior experience requirement and its impact on African–Americans, by comparing the pool of applicants to those who were ultimately selected for interviews. Jackson notes that, of the 14 applicants whose race was identified, only 10% of the Caucasians (1 out of 10) did not have college coaching experience, but 50% of the African–American candidates (2 out of 4) did not have college coaching experience. Further, Jackson noted that all six of the applicants selected for interviews were Caucasian. However, this statistical evidence fails to establish a sufficient causal link between the defendants' employment criterion and its impact on African–Americans. The Second Circuit has recognized that exceedingly small sample sizes often result in statistically unreliable evidence. *Lowe v. Commack Union Free Sch. Dist.*, 886 F.2d 1364, 1371–72 (2d Cir.1989) (holding that the fact that two out of three candidates under age 40 received favorable ratings while only 16 out of 34 candidates over age 40 received such ratings did not support a disparate impact claim in part because of "the unreliability of such a small statistical sample")(superceded by statute on other grounds). The Second Circuit has also indicated that a plaintiff's statistics must meet a certain threshold level of substantiality. *See Smith*, 196 F.3d at 365 ("Statistical data may be admitted to show a disparity in outcome between groups, but to make out a prima facie case the statistical disparity must be sufficiently substantial to raise an inference of causation."); *E.E.O.C. v. Joint Apprenticeship Comm. of the Joint Indus. Bd. of the Elec. Indus.*, 164 F.3d 89, 95 (2d Cir.1998) ("[A] plaintiff's statistical evidence must reflect a disparity so great it cannot be explained by chance.") Here, the relevant sample size is only 14 (of the 36 applicants, the race of only 14 has been identified), which is too

small to yield a statistically significant result.

In *Smith*, the Second Circuit cautioned that in assessing whether a statistical disparity is "sufficiently substantial to establish a prima facie case of disparate impact, there is no one test that always answers that question." *Smith*, 196 F.3d at 366. "Instead," the Court reasoned, "the substantiality of a disparity is judged on a case-be-case basis." *Id.* (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 996 n. 3, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)). In this case, the plaintiff has failed to provide a sufficiently substantial disparity to survive summary judgment, because the sample is too small.

In addition to the statistics discussed above, the plaintiff has presented an article from the *Sports Business Journal*, which purportedly demonstrates the disparity of college football coaches that are African–American. However, this article-without more-does not present the type of substantial statistical evidence contemplated by the Second Circuit in *Smith*. It is only two pages long, and most of it is an opinion piece rather than a scientific statistical analysis. Even when the author does cite statistics, he does not disclose the basis for them or reveal their methodology. Also, the article fails to set forth the type of statistics that are appropriate in a disparate impact analysis. The only statistics in the article concern the percentages of coaches in the various NCAA divisions that are African–American. However, the essence of a disparate impact analysis is a *comparison*. In *Carter v. Ball*, 33 F.3d 450 (4th Cir.1994) the plaintiff brought a Title VII discrimination suit against the Secretary of the Navy. The plaintiff in that case attempted to offer statistical evidence "which purportedly demonstrate[d] a statistical imbalance in the Navy's promotional practices." 33 F.3d at 456. The Fourth

Circuit upheld the district court's exclusion of the statistical evidence. In so holding, the Court emphasized that "[i]n a case of discrimination in hiring or promoting, the relevant comparison is between the percentage of minority employees and the percentage of potential minority applicants in the qualified labor pool.... The mere absence of minority employees in upper-level positions does not suffice to prove a *prima facie* case of discrimination without a comparison to the relevant labor pool." *Id.*[8]; *see also Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) ("the proper basis for the initial inquiry in a disparate-impact case" is "between the racial composition of the qualified persons in the labor market and the persons holding at issue jobs"). 490 U.S. at 650, 109 S.Ct. 2115.[9] Here, the article offered by Jackson makes no such comparison. It simply recites the percentages of college coaches that are African–American. It does not offer statistics on the percentage of African–Americans that would be otherwise qualified for head coaching positions, but were not hired.

Finally, also in support of his disparate impact claim, the plaintiff asserts that the use of the prior college coaching experience requirement has yielded discriminatory results when applied to other athletic programs at UNH. The plaintiff contends that only one out of 23 coaches hired since 1993, when the plaintiff asserts the prior college coaching experience requirement was adopted for most head coaching positions at UNH, has been African–American. However, even if true, the Supreme Court held in *Wards Cove* that "[t]he percentage of nonwhite workers found in other positions in the employer's labor force is irrelevant to the question of a prima facie statistical case of disparate impact." 490 U.S. at 653, 109 S.Ct. 2115. Thus, the plaintiff has failed to meet his burden of establishing a prima facie case of disparate impact, and this Court also grants summary judgment as to that claim.

For the forgoing reasons, the defendant's Motion for Summary Judgment [Doc. # 14] is GRANTED and the case is DISMISSED.

---

**8.** The statistics offered by the plaintiff in *Carter* were in support of a disparate treatment claim, but the Court held that they would have been inadmissible in a disparate impact case for precisely the same reasons. The Court observed

> the test for a disparate impact claim requires (1) that there is an underrepresentation of the qualified members in a protected class promoted to the positions at issue and (2) that specific elements of the employer's promotion criteria had a significant disparate impact on a protected class. Without any evidence of how many African–Americans were qualified for positions at the level

to which [the plaintiff] sought to be promoted, there can be no reliable proof of under-representation.

*Carter*, 33 F.3d at 457 fn. 9 (citations and internal quotation marks omitted).

**9.** The Court did observe that in some cases such statistics on the labor market would be "difficult if not impossible to ascertain" and that in those instances, other statistical comparisons might be appropriate. *Wards Cove*, 490 U.S. at 651, 109 S.Ct. 2115. Here, the plaintiff has not made any showing that statistics on the relevant labor market would be difficult to produce.