Maxine **RICHARDSON**, Plaintiff,

v.

**HARTFORD PUBLIC LIBRARY,**
and Jane Doe, Defendants.

**No. CIV. 3:09CV01220 AWT.**

United States District Court,
D. Connecticut.

Sept. 2, 2013.

Elisabeth Ann Seieroe Maurer, Maurer & Associates, Ridgefield, CT, for Plaintiff.

Melanie E. Dunn, Peter A. Janus, Siegel, O'Connor, O'Donnell & Beck, P.C., Hartford, CT, for Defendants.

### RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

ALVIN W. THOMPSON, District Judge.

In her Second Amended Complaint, plaintiff Maxine Richardson ("Richardson") asserts claims against defendants Hartford Public Library (the "Library") and Jane Doe relating to Richardson's unsuccessful application for employment at the Library. Specifically, Richardson asserts claims in the nature of Quo Warranto (First Cause of Action); for discrimination in violation of Title VII, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and 42 U.S.C. § 1981 (Second, Third, and Fourth Causes of Action, respectively); for violation of her Equal Protection and Due Process rights pursuant to 42 U.S.C. § 1983 (Fifth and Sixth Causes of Action, respectively); and for Equitable Estoppel (Seventh Cause of Action).

Richardson has moved for partial summary judgment with respect to whether the Library is a government entity, and the Library has moved for summary judgment on all claims against it. For the reasons set forth below, Richardson's motion for partial summary judgment is being denied and the Library's motion for summary judgment is being granted in part and denied in part.

### I. FACTUAL BACKGROUND

Richardson is a Native American woman, who was in her mid-to-late sixties at all times relevant to the complaint. The resume she submitted to the Library indicates she has master's degrees in library science, reading, education, and corporate and political communication, and that she has work experience as a librarian in public schools and as a director of children's services at a public library.

The Library was founded in 1774 as The Library Company, was incorporated in 1839 as the Hartford Young Men's Institute, became the Hartford Library Association in 1878, and was later selected by the City of Hartford to serve as the public library. It has received taxpayer support since 1892. In 1893, the Library's name was changed to the Hartford Public Library by a special act of the Connecticut General Assembly.

The Library's affairs are managed by a Board of Directors (the "Board") that includes 16 directors plus the Mayor of the City of Hartford (the "Mayor") ex *officio.* Of the 16 directors other than the Mayor, three are appointed by the Mayor or the Court of Common Council of the City of Hartford (the "Common Council"), one is

appointed by the Board of Education of the City of Hartford (the "BOE"), and twelve are elected by the Library's Corporators. The Library's 150 Corporators are all appointed by the Board. The Library also has a Chief Executive Officer, who is appointed by the Board, serves at the Board's pleasure, and is responsible for administering the Library and executing the Board's policies.

In addition to having some of its directors appointed by the Mayor, the Common Council and/or the BOE, the Library has other ties to the City of Hartford (the "City"), including the following:

- The Library receives most of its funding from the City. Over the past several years, the City has funded over 80% of the Library's budget. Each year, the Common Council appropriates a fixed allocation of money to the Library.[1]

- "The Library employees participate in the City of Hartford's medical insurance and pension benefit plans. However, the costs of these benefits is paid for by the Library, and the Library establishes the specific eligibility criteria for its employees." (Deft.'s Local Rule 56(a)1 Statement (Doc. No. 67–2) ¶ 23; *see also* Pl.'s Local Rule 56(a)2 Statement (Doc. No. 74) ¶ 23 (admitting same).) *See also* Hartford, Conn. Municipal Code § 2A–1 ("This chapter is intended to define the retirement rights of those employees of the City of Hartford (the 'city'), the Hartford Public Library (the 'library'), the Hartford Board of Education (the 'board') and the pension commission who are members of the City of Hartford Municipal Employees' Retirement Fund . . . .") (attached at Doc. No. 68–11).

- In a sworn affidavit that was submitted by the Library to the Connecticut Commission on Human Rights and Opportunities, Debra Carrier–Perry ("Perry"), Associate Librarian for Youth Services for the Hartford Public Library, stated that "The Library has an affirmative action and Equal Opportunity policy in place and enforced by the Library. A copy of the policy is attached hereto as Exhibit A," where the document attached as Exhibit A was the City of Hartford Affirmative Action and Equal Employment Opportunity Policy. (Aff. of Debra Carrier–Perry (Doc. No. 68–2 at 14–19) at ¶ 6.)[2]

- A five-year plan created by the City in 2005 includes a Library representative on a list of City Department Heads. *See* City of Hartford Five–Year Consolidated Community Development Plan, May 15, 2005 (Doc. No. 68–12).[3] The five-year plan also

---

1. The Library has also received annual grants from the state of Connecticut.

2. The Library contends, however, that it was under no obligation to follow the City's hiring policies, but rather controls its own hiring policies. (*See, e.g.,* Aff. of Matthew K. Poland ¶ 16 ("The Library has never been subject to the Municipal Code, and it is not and has never been a part of the City's 'merit system.' "); *id.* at ¶ 17 ("The City of Hartford Department of Human Resources has never had any involvement in the administration or decision making of the Library's human resources activities. All aspects of human resources management . . . are carried out by the Library pursuant to its own personnel policies as established by the Library's Board of Directors."); *id.* at 18 ("The Library has never utilized the procedure for selection of candidates and employees under the City's Merit Selection and Civil Service Ordinances. . . .").).

3. In contrast, a memorandum prepared by the City's Corporation Counsel in 2008 concluded that the Library's Head Librarian is not a city employee and not eligible for bene-

lists library support as one of its objectives.

- The City of Hartford Job Openings website includes a link to Hartford Public Library Job Openings.

In the spring of 2007, the Library advertised the position of Children's Library Manager and announced it would accept applications for the position. On April 30, 2007, Richardson submitted an application for the position. Due to budgetary constraints, the Library postponed filling the Children's Library Manager position. In September 2007, three of ten applicants for the position were located by the Library and remained interested in the position. Richardson was among those three applicants, all of whom were interviewed by the Library in late September 2007.

The Library's hiring process generally works as follows:

Applications and resumes are initially reviewed to determine whether candidates appear to have the minimal qualifications necessary to perform the essential functions of the position. The departmental manager reviews the qualified applicant's [sic] and selects applicants for interviews. An interview panel (normally consisting of three people) conducts a structured interview by asking each applicant a series of predetermined questions. The responses are rated ... and an average score is assigned to each applicant. After discussion among interview panelists, the highest rated applicant is often offered the position, contingent upon successful completion of applicable background checks.

fits reserved for City employees and department heads. *See* City of Hartford Interdepartmental Memorandum from John Rose,

(Deft.'s Rule 56(a)1 Statement ¶ 34; *see also* Pl.'s Local Rule 56(a)2 Statement ¶ 34 (admitting same).)

The panel that interviewed Richardson included Perry, Anwar Ahmad ("Ahmad") (Associate Librarian for Neighborhood Library Services), and Mary Albro ("Albro") (Associate Librarian for Adult Learner Services). Perry, Ahmad, and Albro were all in their fifties and sixties at times relevant to the complaint. Ahmad is African–American; Perry and Albro are Caucasian.

Out of a possible score of 90 points, the panel members gave Richardson scores of 50, 64, and 65, which put her in the "marginal" range. Perry, Ahmad, and Albro have each given sworn statements that Richardson performed poorly in her interview, including having difficulty clearly and directly answering questions with specifics. Richardson contends, however, that "the answers provided by [her] which indicate an older or racially diverse perspective were arbitrarily rated lower than age and/or race-neutral answers provided by the other applicants." (Pl.'s Mem. in Response to Deft.'s Mot. Summ. J. (Doc. No. 73) at 20.)

Richardson and one of the other three applicants were informed that they were not selected for the position. The third applicant, who received scores of 82, 85, and 88, was offered the position but did not accept. The age and race of the applicant who was offered the Children's Library Manager position "are unknown." (Aff. of Debra Carrier–Perry (Doc. No. 67–8 at 49–53) ¶ 17.)

The Library subsequently re-listed the position, changing the title of the position to Youth Services Manager, but otherwise keeping the position essentially the same.

Jr., Corporation Counsel to Lee Erdmann, COO (May 8, 2008) at 5 (Aff. of Matthew K. Poland, Attach. 2).

According to Richardson, after seeing a notice for the Youth Services Manager position, she called the Library and told a Library employee (possibly named Mrs. Elder) that she would like her application considered for the Youth Services Manager position, and was told that her application would be considered. According to the Library, however, it has a long-standing policy that applicants must submit separate applications for each job they apply for. Richardson did not submit a new paper application for the Youth Services Manager position and was not interviewed for that position.

Richardson wrote Perry a letter regarding the Library's hiring policies and referencing the Youth Services Manager position, as well as "each time [she] was denied employment with the [Library]." (Letter from Richardson to Perry (Doc. No. 74–14).) In response, John Weedon ("Weedon"), the Library's Deputy Chief Librarian for Administrative Services, wrote a letter to Richardson, referring to Richardson's "letter ... concerning [her] recent application for Youth Services Manager," assuring Richardson that the Library "follows the City of Hartford's Affirmative Action and Equal Employment Opportunity Policy," and stating that the Library's hiring policy complies with state and federal laws. (Letter from Weedon to Richardson (Dec. 13, 2007) (Doc. No. 74–15).)

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(a). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994). When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir. 1987). Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990)).

However, the inferences drawn in favor of the nonmovant must be supported by evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 315 (2d Cir.1997) (quoting *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## III. DISCUSSION

### A. Fifth and Sixth Causes of Action: Claims Pursuant to 42 U.S.C. § 1983

■ In the Fifth and Sixth Causes of Action, which are brought pursuant to 42 U.S.C. § 1983, Richardson asserts claims for the violation of her Equal Protection and Due Process rights. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that [her] constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted).

In *Horvath v. Westport Library Ass'n*, 362 F.3d 147 (2d Cir.2004), the Second Circuit considered whether a library was a private entity or state actor in the context of a § 1983 Due Process claim brought by a library employee. In *Horvath*, the court recognized that the Second Circuit has

> utilized the following standard to determine whether or not a corporate entity qualifies as a state actor: "only if (1) the

government created the corporate entity by special law, (2) the government created the entity to further governmental objectives, and (3) the government retains 'permanent authority to appoint a majority the directors of the corporation' will the corporation be deemed a government entity for the purpose of the state action requirement." *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 84 (2d Cir.2000) (quoting *Lebron [v. National Railroad Passenger Corp.]*, 513 U.S. [374] at 400, 115 S.Ct. 961 [130 L.Ed.2d 902 (1995) ] ).

*Horvath*, 362 F.3d at 153. The court found that the first two elements of the *Lebron* test were easily met. The court further concluded that the third element could be satisfied even though "only one-half, and not a majority, of the [Westport Library]'s trustees [we]re appointed by the Town." *Id.*[4] "The additional fact that only a little more than a tenth of the [Westport Library]'s funding [came] from sources other than the Town convince[d] [the court] that the Town maintain[ed] sufficient control over the Library to qualify it as a state actor for the purposes of Horvath's claim." *Id.* "Thus, [the court] conclude[d] that the argument that the [Westport Library] is a private entity 'is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings, and there is no substantial reason to claim unfairness in applying constitutional standards to it.'" *Id.* (quoting *Brentwood Academy v. Tenn. Secondary School Athletic Ass'n*, 531 U.S. 288, 289, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)); *see also id.* at 154 ("The combination of pervasive public funding of the [Westport Library] and control of one-half of its governing board persuade us that

---

**4.** The other half were appointed by the Westport Library's Board of Trustees. *See Hor-* *vath*, 362 F.3d at 149.

such 'pervasive entwinement' is present here.").

■ Under the standard set forth in *Lebron* and *Horvath*, the Library does not qualify as a state actor. The Library's Board consists of 16 directors plus the Mayor *ex officio*. Of the 16 directors, three are appointed by the Mayor or the Common Council, one is appointed by the BOE, and 12 are elected by the Library's Corporators (who are appointed by the Library's Board). Thus, the City does not have permanent authority to appoint a majority of the directors, and the third element of the *Lebron* test is not satisfied. Moreover, the City does not have authority to appoint even one-half of the directors and, thus, the third element even as interpreted in *Horvath* is not satisfied. Furthermore, the fact that the Mayor is on the Board does not lead to the conclusion that there is pervasive entwinement between the City and the Library because the four directors appointed by the City plus the Mayor account for only five of the 17 Board members, considerably less than a majority of the Board.

Therefore, the Library does not qualify as a state actor for the purpose of claims brought pursuant to § 1983 and summary judgment is being granted in favor of the Library with respect to the Fifth Cause of Action and the Sixth Cause of Action.

### B. First Cause of Action: In the Nature of Quo Warranto

■ The First Cause of Action is an action in quo warranto, which is governed by Conn. Gen.Stat. § 52–491.[5] "A successful quo warranto action unseats an illegal office holder and declares the position va-

cant." *New Haven Firebird Soc. v. Bd. of Fire Comm'rs of City of New Haven,* 219 Conn. 432, 436, 593 A.2d 1383 (1991). As the plaintiff concedes, the quo warranto claim must fail if the court finds that the Library is not a municipal actor. (*See* Pl.'s Mem. in Response to Deft.'s Mot. Summ. J. at 30.) *See also New Haven Firebird Soc.,* 219 Conn. at 436, 593 A.2d 1383 ("In a quo warranto proceeding, the title to be challenged must be a public office." (citing *State ex rel. Stage v. Mackie,* 82 Conn. 398, 400, 74 A. 759 (1909))). For the reasons set forth above with respect to the § 1983 claims, the Library is not a municipal actor. Thus, the positions of Children's Library Manager and Youth Services cannot be considered public offices, and Richardson cannot maintain a quo warranto claim against the Library.

Therefore, summary judgment is being granted in favor of the Library with respect to the First Cause of Action.

### C. Second, Third, and Fourth Causes of Action: Racial and Age Discrimination

The Library's Second, Third, and Fourth Causes of Action assert claims of race and age discrimination in violation of Title VII, ADEA, and 42 U.S.C. § 1981. Each of these claims is analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Brown v. City of Syracuse,* 673 F.3d 141, 150 (2d Cir.2012) (Title VII and § 1981); *Bucalo v. Shelter Island Union Free Sch. Dist.,* 691 F.3d 119, 129 (2d Cir.2012) (ADEA). To establish a prima facie case of age discrimina-

---

**5.** "When any person or corporation usurps the exercise of any office, franchise or jurisdiction, the Superior Court may proceed, on a complaint in the nature of a quo warranto, to punish such person or corporation for such

usurpation, according to the course of the common law and may proceed therein and render judgment according to the course of the common law." Conn. Gen.Stat. § 52–491.

tion, a plaintiff must show: "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir.2010). Similarly, "[t]o establish a claim of racial discrimination a claimant 'must show: (1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'" *Brown*, 673 F.3d at 150 (2d Cir.2012) (quoting *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir.2008)). The Second Circuit "ha[s] characterized the evidence necessary to satisfy this initial burden as 'minimal' and 'de minimis.'" *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir.2001). If the plaintiff establishes a prima facie case,

> the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination.

*Gorzynski*, 596 F.3d at 106 (internal citations and quotation marks omitted).

The Library contends that Richardson's discrimination claims fail because she cannot establish that she was qualified for the Children's Library Manager position. While the Library contends that it chose not to hire Richardson following her interview due to her poor performance in the interview, Richardson contends that the low scores she was given during her interview are the result of improperly biased scoring by the interview panel. There exists a genuine issue as to whether Richardson was qualified.[6]

The Library also contends that Richardson's discrimination claims fail because Richardson has not presented evidence demonstrating discrimination on the basis of her race or age. (*See* Mem. Supp. Deft.'s Mot. Summ. J. (Doc. No. 67–1) at 15 ("[a]side from Richardson's bare assertion that she feels she was discriminated against because of her race/color, she has presented no evidence in support of that allegation"); *id.* at 17 ("Richardson has offered no material facts to support her claim that she was the victim of age discrimination by the Library.").) However, the correlation between Richardson's low interview scores and what she describes as the age- and race-related content of her answers given in the interview is sufficient to create a genuine issue as to this element of her claims.

Additionally, the Library contends it is entitled to summary judgment on the Title VII and ADEA claims to the

---

6. The facts in this case are quite different than in *Jackson v. Univ. of New Haven*, 228 F.Supp.2d 156 (D.Conn.2002), which the Library cites in support of its argument that Richardson was not qualified. In *Jackson*, the plaintiff, who lacked "collegiate coaching experience" as expressly required by the job posting, was not offered an interview, and the court found that the plaintiff failed to make out a prima facie case of discrimination because he failed to demonstrate that he was qualified for the position he sought. Unlike the objective determination in *Jackson* of whether or not the plaintiff had the requisite employment experience, the Library asks the court to rule as a matter of law that Richardson is not qualified based on the interview panel members' subjective critiques of her interview performance, notwithstanding the fact that Richardson provides a conflicting assessment.

extent those claims concern the Youth Services Manager position because, *inter alia*, "[e]ven if the Library gave Richardson incorrect information as to whether or not her previous application would be considered for the reposted position, there is no evidence that such a representation by the Library was motivated by discriminatory reasons." (*Id.* at 15 n. 1.) "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir.2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. 2548). Richardson points to the following facts as evidence that discriminatory reasons motivated the Library to not hire Richardson for the Youth Services Manager position: "Richardson's diligent pursuit of an employment opportunity with the [Library], the sudden and unnecessary change in job title, [ ] Weedon's December 13, 2007 letter, and Richardson's testimony regarding the [Library]'s misleading statement about her application for the 'Youth Services Manager' position." (Pl.'s Mem. in Response to Deft.'s Mot. Summ. J. 36–37.) However, there is no evidence tying any of these facts to Richardson's age or race.[7] Thus, there is no genuine issue for trial as to whether Richardson was discriminated against based on her race and/or age with respect to the Youth Services Manager position, and the Second and Third Causes of Action are being dismissed to the extent they concern that position.

Finally, the Library contends that it is entitled to summary judgment on Richardson's § 1981 claim to the extent it is based on the Library's alleged failure to follow the City's civil service procedures. As discussed above in Section III.A, the Library is not an administrative subdivision of the City. There is no evidence that the Library, as a non-municipal entity, is subject to the City's civil service procedures. Thus, to the extent that the Fourth Cause of Action is premised on a failure by the Library to follow the City's civil service procedures, the Library's motion for summary judgment is being granted with respect to that claim.

Therefore, the Library's motion for summary judgment is being granted with respect to the Second and Third Causes of Action to the extent they concern the Youth Services Manager position and with respect to the Fourth Cause of Action to the extent it is based on a failure by the Library to follow the City's civil service procedures.

### D. Seventh Cause of Action: Equitable Estoppel

■ The Seventh Cause of Action is a claim for equitable estoppel. In particular, Richardson claims that, due to false statements made to her by an agent of the Library, the Library is equitably estopped from enforcing its requirement that she submit a second application and from refusing to hire her.

> In its general application, [the Connecticut Supreme Court] ha[s] recognized that there are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done.

---

7. For instance, Richardson has offered no evidence that the agent of the Library she claims she spoke to about applying for the Youth Services Manager position was even aware of her race or age.

*Glazer v. Dress Barn, Inc.*, 274 Conn. 33, 60, 873 A.2d 929, 947 (2005) (internal quotation marks and brackets omitted). "Whether a party has met his burden of proving equitable estoppel is a question of fact." *St. Germain v. St. Germain*, 135 Conn.App. 329, 334–35, 41 A.3d 1126 (2012) (citing *Celentano v. Oaks Condominium Assn.*, 265 Conn. 579, 614, 830 A.2d 164 (2003)).

The Library argues that it is entitled to summary judgment on the equitable estoppel claim because Richardson "has only provided vague and inconsistent statements during her deposition testimony in support of the claim under this count." (Mem. Supp. Deft.'s Mot. Summ. J. 33.) However, Richardson's deposition testimony regarding her conversation with an agent of the Library with respect to the Youth Services Manager position is sufficient to raise a genuine issue of material fact as to the elements of a claim for equitable estoppel.

The Library further argues that Richardson "may not use equitable estoppel to force the Library to hire her since there is no evidence that she would have been offered the job as the Youth Services manager if she had submitted such an application." (*Id.*) "Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist." *W. v. W.*, 248 Conn. 487, 496–97, 728 A.2d 1076 (1999).

Richardson has produced evidence that (i) she applied for the Children's Library Manager position but was not hired for that position for discriminatory reasons, and (ii) the Children's Library Manager position and Youth Services Manager position were materially the same. Conse-quently, Richardson would not have been hired for the Youth Services Manager position had she submitted a new paper application for that position because she was being discriminated against. There is no evidence that a different hiring process would have been followed or that different decision-makers would have been involved. In fact, the only reasonable inference from the evidence is that there would have been the same process and decision-makers. Thus, no reasonable jury could conclude that Richardson was prejudiced by the alleged statements of the Library's agent to Richardson regarding the application process for the Youth Services Manager position.

Therefore, the Library's motion for summary judgment with respect to the Seventh Cause of Action is being granted.[8]

## IV. CONCLUSION

Defendant Hartford Public Library's Motion for Summary Judgment (Doc. No. 67) is hereby GRANTED in part and DENIED in part. Plaintiff Maxine Richardson's Motion for Partial Summary Judgment (Doc. No. 75) is hereby DENIED.

Summary judgment is granted in favor of the defendant with respect to the First, Fifth, and Sixth Causes of Action; the Second and Third Causes of Action to the extent they concern the Youth Services Manager position; the Fourth Cause of Action to the extent it is based on a failure by the Library to follow the City of Hartford's civil service procedures; and the Seventh Cause of Action.

It is so ordered.

---

8. The Library also argues that if Richardson's claim were construed as a breach of contract claim, equitable estoppel would not be an available remedy. The court does not read the complaint as making a breach of contract claim.