**THE RAMAPO HOMEOWNERS' ASSOCIATION, an unincorporated Association of the State of New York, Plaintiff,**

v.

**NEW YORK STATE OFFICE OF MENTAL RETARDATION and Developmental Disabilities, Thomas G. Maul, New York State Commissioner of the Office of Mental Retardation and Developmental Disabilities, and Provider Hamaspik of Rockland County, Inc., Defendants.**

No. 01 Civ. 4083(SHS).

United States District Court, S.D. New York.

Jan. 16, 2002.

522

---

*OPINION*

STEIN, District Judge.

An association of homeowners in the town of Ramapo, New York, has brought this action against a New York State agency, its commissioner, and a not-for-profit corporation that operates community residences for developmentally disabled persons. The homeowners allege that a broad array of their federal constitutional rights have been impermissibly impaired by virtue of defendants' decision to locate a community residence for the disabled in Ramapo. Defendants have moved pursuant to Fed.R.Civ.P. 12(b) to dismiss the complaint on the grounds that (1) the Eleventh Amendment to the United States Constitution prohibits suit against a New York State agency and (2) the complaint fails to

state a claim upon which relief can be granted. Because the Eleventh Amendment does preclude the suit against the state agency and because the homeowners have failed to set forth any cognizable violations of their federal rights, defendants' motion is granted and the complaint must be dismissed.

## BACKGROUND

### I. The Padavan Law

The State of New York has a policy favoring the placement of mentally and developmentally disabled persons in small community residences which are operated by the New York State Office of Mental Retardation and Developmental Disabilities or by private sponsoring agencies under that agency's aegis. *See Jennings v. New York State Office of Mental Health,* 90 N.Y.2d 227, 233–34, 682 N.E.2d 953, 660 N.Y.S.2d 352 (1997); *Crane Neck Ass'n v. New York City/Long Island County Servs. Group,* 61 N.Y.2d 154, 160–61, 460 N.E.2d 1336, 472 N.Y.S.2d 901 (1984). That policy is implemented, in part, by N.Y. Mental Hygiene Law § 41.34, which is known as the Padavan Law. *See Crane Neck,* 61 N.Y.2d at 162, 472 N.Y.S.2d 901, 460 N.E.2d 1336. The Padavan Law establishes the procedures used to determine where community residential facilities, in which up to fourteen disabled persons, including children and youth, can live and receive treatment, are to be located. *See id.* The law's provisions were designed "to provide for a fair distribution of community residences and to bring municipalities into the process of site selection, thereby minimizing resistance and avoiding legal battles that had impeded the community residence [policy]." *Id.* at 163, 472 N.Y.S.2d 901, 460 N.E.2d 1336. As this action as well as others suggest, "this goal has not always been met." *De Jesus–Keolamphu v. Village of Pelham Manor,* 999 F.Supp. 556, 560 (S.D.N.Y.), *aff'd,* 166 F.3d 1199 (2d Cir.1998).

Pursuant to the Padavan Law, a sponsoring agency that intends to establish a community residence at a specific site must notify the chief executive officer of the municipality within whose borders the site lies. *See* N.Y. Mental Hygiene Law § 41.34(c)(1). The municipality then has forty days to either approve the recommended site, suggest other suitable sites within its jurisdiction, or object to the establishment of the facility on the ground that the municipality is already saturated with similar facilities. *See* N.Y. Mental Hygiene Law § 41.34(c)(1)(A)-(C); *see also Jennings,* 90 N.Y.2d at 240, 660 N.Y.S.2d 352, 682 N.E.2d 953. The municipality is authorized to hold a public hearing prior to making its decision. *See* N.Y. Mental Hygiene Law § 41.34(c)(2).

If the sponsoring agency and the municipality do not agree on a suitable site, either party can request an immediate hearing before the Commissioner of the New York State Office of Mental Retardation and Developmental Disabilities to resolve the dispute. *See* N.Y. Mental Hygiene Law § 41.34(c)(5); *see also Jennings,* 90 N.Y.2d at 240, 660 N.Y.S.2d 352, 682 N.E.2d 953. The Commissioner, after considering "the need for such facilities in the municipality" and the "existing concentration" of similar facilities "in the municipality or in the area in proximity to the site selected," "shall sustain [a municipality's] objection if he determines that the nature and character of the area in which the facility is to be based would be substantially altered as a result of the establishment of the facility." N.Y. Mental Hygiene Law § 41.34(c)(5); *see also Jennings,* 90 N.Y.2d at 240–41, 660 N.Y.S.2d 352, 682 N.E.2d 953. A disappointed party—including a neighboring landowner—may seek review of the Commissioner's

determination in a proceeding brought in New York State court pursuant to Article 78 of the N.Y. C.P.L.R. *See* N.Y. Mental Hygiene Law § 41.34(d); *Talisman Drive Civic Ass'n v. Webb,* 138 A.D.2d 610, 610, 526 N.Y.S.2d 193 (2d Dep't 1988) (citing *Grasmere Homeowners' Ass'n v. Introne,* 84 A.D.2d 778, 778, 443 N.Y.S.2d 956 (2d Dep't 1981)).

## II. *Selection of the 68 East Concord Drive Site*

In September 2000, defendant Provider Hamaspik of Rockland County, Inc., a not-for-profit agency that operates community residences for the disabled, notified the Town of Ramapo that it intended to establish a community residence for eight developmentally disabled adults at 68 East Concord Drive in that town. (Compl.¶ 9, Ex. A.) Ramapo's site selection committee then mailed notices to those residents who lived near the site and, after holding a hearing on Hamaspik's proposal, recommended to the Ramapo Town Board that it approve it. (Compl.¶¶ 11–12, Exs.D, E.) Plaintiff, the Ramapo Homeowners' Association, a group of homeowners living near 68 East Concord Drive, urged the Town Board to reject the Hamaspik proposal or, at a minimum, consider alternative sites for the home. (Compl.¶ 13, Ex. E.) At a meeting held on November 13, 2000, the Town Board voted to reject the Hamaspik proposal. (Compl.¶ 14.)

Hamaspik then requested an immediate hearing before the Commissioner, defendant Thomas G. Maul, to resolve its dispute with the Town, as it was permitted to do pursuant to the Padavan Law. (Compl.¶ 15.) Before the hearing took place, the Commissioner denied the Homeowners' Association's attempt to intervene at the hearing, stating that the Padavan Law did not recognize any party to the proceeding other than the Town and the proposed site sponsor. (Compl.¶¶ 16–17, Exs.F, G.)

At the start of the Commissioner's hearing, which was held at the Ramapo Town Hall on December 11, 2000, the Town objected to the Commissioner's decision to deny intervention by the Homeowners' Association, arguing that the Padavan Law's scheme was fundamentally unfair and unconstitutional. (Compl. ¶ 18, Ex. H. at 21–23.) The hearing officer, Nicholas Pagano, Jr., told the Town attorney that although the Homeowners' Association could not intervene, Pagano would allow him to delegate any of his authority at the hearing to the Homeowners' Association's attorney. (Compl. Ex. H. at 24.) Pagano then took testimony and evidence from Hamaspik and the Town concerning the need for the proposed facility and the impact that it would have on the community. (Compl.Ex. H, ¶ 29.)

Approximately two months later, the Commissioner determined that he could not sustain the Town's objection to Hamaspik's proposal to build a residential facility at 68 East Concord Drive. (Compl. Ex. J.) Rather than file an Article 78 petition to contest the Commissioner's determination, the Homeowners' Association then commenced this litigation.

## III. *The Complaint*

The Homeowners' Association brought this action pursuant to 42 U.S.C. § 1983 on the ground that its members' constitutional rights have been violated. Specifically, plaintiff claims that the Commissioner's enforcement of the Padavan Law denies the "associational and economic liberties" of its members. (Compl.¶ 1.) In addition, because the law itself is "arbitrary" and "unreasonable," and because it has been enforced in an "arbitrary" and "unreasonable" manner, Association members have allegedly been denied "Due Process and

Equal Protection of the Laws" and the "privileges and immunities of citizenship." (Compl.¶ 2.) More specifically, the complaint claims that the law provides no standard, and that no standard has been established by regulation, that defines the meaning of the terms "undue concentration," "the nature and character of the area," "area," "neighborhood," "need," "over-concentration," or "substantial alteration." (Compl.¶¶ 28(d), 31.) As a result, the Commissioner allegedly makes site selection decisions in an "arbitrary manner," (Compl.¶ 28(d)), with "no objective standard," thus "contraven[ing] the guarantees of due process [and] equal protection of the laws," (Compl.¶ 31).

### DISCUSSION

### I. The Defendants' Motion to Dismiss

#### A. Subject Matter Jurisdiction

██ As a preliminary matter, the defendants assert that this Court does not have jurisdiction over the OMRDD because the Eleventh Amendment to the United States Constitution prohibits suits against an unconsenting state. *See* U.S. Const. amend. XI; *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). This rule applies not only to the states themselves but also to those "governmental entities that are considered 'arms of the state,'" *Komlosi v. New York State OMRDD,* 64 F.3d 810, 815 (2d Cir.1995) (quoting *Will v. Michigan Dept. of Police,* 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)), and it has already been determined that, "[f]or Eleventh Amendment purposes, OMRDD is to be considered an arm of New York State," *id.* (citing N.Y. Mental Hygiene Law § 13.01). Accordingly, the OMRDD may not be sued in federal court, and the Association's claims against it must be dismissed.

#### B. Failure to State a Claim

██ Jurisdictional matters aside, the remaining defendants move to dismiss the entire action for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). A court may grant such a motion only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir.2000) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In deciding whether that is the case, the court must accept as true all of the factual allegations set out in the complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally. *See id.* (citing *Desiderio v. National Ass'n of Sec. Dealers,* 191 F.3d 198, 202 (2d Cir.1999)).

██ The complaint in this action purports to state claims pursuant to 42 U.S.C. § 1983. Section 1983 provides a cause of action in federal court for any person whose federal constitutional rights, privileges, or immunities have been violated under color of state law. *See* 42 U.S.C. § 1983. Section 1983, however, "is only a grant of a right of action; the substantive right giving rise to the action must come from another source." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir. 1995); *see also City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Therefore, to state a section 1983 claim upon which relief can be granted, a plaintiff must allege not only that the defendant was acting under color of state law, but also that the defendant "has deprived him of a federal right." *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980).

The Homeowners' Association contends that the defendants have deprived its

members of federal rights arising from (1) the First Amendment, (2) the Due Process Clause, and (3) the Equal Protection Clause. Because that contention is incorrect as a matter of law, the Association's suit must be dismissed pursuant to Rule 12(b)(6).

### 1. *First Amendment Freedom of Association and Right to Petition*

■ The Association alleges that the Commissioner's enforcement of the Padavan Law violates "associational ... liberties" protected by the Constitution. Its argument seems to be that the Association's members, as community dwellers, have a right "to have their chosen associations [with other community dwellers] ... not unduly disrupted" by the state-sanctioned establishment of too many OMRDD residences in their community. (Pl.'s Opp. Mem. at 12.) Although it is possible that the Association may have a constitutional right, grounded in the First Amendment, to exclude developmentally disabled people from its membership rolls,[1] *see Boy Scouts of America v. Dale,* 530 U.S. 640, 648, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000) ("Forcing a group to accept certain members may impair the ability of the group to express [its] views."), there is no authority for the proposition that it has a constitutional right to exclude them from the community. Nor is there any authority to support the Association's assertion that the Padavan Law or the Commissioner violated its First Amendment right "to petition the government for a redress of grievances" by denying it the right to intervene formally in the site-selection hearing. *See De Jesus–Keolamphu,* 999 F.Supp. at 566–67. The Association, therefore, has failed to state a section 1983

cause of action predicated on rights arising from the First Amendment.

### 2. *Fourteenth Amendment Due Process Clause*

The Association also alleges that the Commissioner's enforcement of the Padavan Law has deprived its members of property, liberty, and due process in violation of the Fourteenth Amendment's Due Process Clause. However, as explained below, none of the due process deprivations alleged by the Association are cognizable as constitutional violations. Thus, as with its First Amendment claims, so with its Due Process Clause claims: the Association fails to state a viable section 1983 cause of action.

#### a. *Deprivation of Property*

■ "[A] plaintiff may not successfully claim a deprivation of property without due process absent the identification of a protected property interest." *West Farms Assocs. v. State Traffic Comm'n,* 951 F.2d 469, 472 (2d Cir.1991) (citing *Fusco v. Connecticut,* 815 F.2d 201, 205 (2d Cir.1987)). Such property interests are usually derived from state law. *See id.* Moreover, in addition to a cognizable property right, the plaintiff must allege that governmental action with respect to that property right amounts to a "deprivation," and that the deprivation occurred without due process. *Greene v. Town of Blooming Grove,* 935 F.2d 507, 510 (2d Cir.1991); *see also Fusco,* 815 F.2d at 205.

■ The Association argues that the Padavan Law confers upon its members a property right by guaranteeing that their community will not be "substantially altered" by an "undue concentration" of facilities. (Pl.'s Opp. Mem. at 16.) The

---

**1.** This issue is specifically not before this Court and is not being determined in this

Opinion.

Padavan Law's purpose, however, "is not to adjudicate property rights but to assess the pros and cons of various locations for group homes." *Mehta v. Surles,* 905 F.2d 595, 598 (2d Cir.1990). Therefore, "it does not purport to have any effect on individuals' substantive real property rights." *Id.* Moreover, although the members of the Association may have a property right in the value of their own homes, " 'governmental action allegedly causing a decline in property values has never been held to 'deprive' a person of property.' " *Fusco,* 815 F.2d at 206 (quoting *BAM Historic Dist. Ass'n v. Koch,* 723 F.2d 233, 237 (2d Cir.1983)) (alterations omitted); *see also Mehta,* 905 F.2d at 598, *aff'g in relevant part* 720 F.Supp. 324, 331 (S.D.N.Y.1989) (Padavan site-selection does not deprive community residents of property rights merely because of diminution of property values); *Howell v. Apple, Inc.,* No. CIV–89–1574, 1991 WL 66366, at \*2 (E.D.N.Y. April 24, 1991) (same). Thus, the Association has failed to allege a cognizable deprivation of property.

### b. *Deprivation of Liberty*

"A liberty interest [protected by the requirements of the Due Process Clause] may arise from either of 'two sources—the Due Process Clause itself [or] the laws of the States.' " *Rodriguez v. McLoughlin,* 214 F.3d 328, 337 (2d Cir. 2000) (quoting *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)) (internal quotations omitted). In this case, neither source gives rise to the expansive liberty interests claimed by the Association.

First, the Due Process Clause itself does not give the Association's members a liberty interest in not having Hamaspik establish a home for the developmentally disabled in their neighborhood.

The liberty protected by the Fourteenth Amendment "does not include the maintenance of transient levels of the quality of neighborhood life." *BAM Historic Dist.,* 723 F.2d at 237 (citations omitted) (no basis in Fourteenth Amendment for asserting a "liberty" interest in not having city operate a homeless shelter in plaintiffs' neighborhood). The Association's attempt to recast this argument as an "intimate association" argument—that the Constitution somehow confers on parents a liberty interest in raising and educating children without an allegedly "chilling" presence of the developmentally disabled—does not change the result.

Second, the State of New York has not conferred a liberty interest upon the Association's members. "A state creates a protected liberty interest by placing substantive limitations" on an official's discretion to deprive an individual of an otherwise unprotected liberty interest. *Rodriguez,* 214 F.3d at 338; *Silano v. Sag Harbor Union Free School Dist. Bd. of Educ.,* 42 F.3d 719, 724–25 (2d Cir.1994); *BAM Historic Dist.,* 723 F.2d at 236. Such interests, however, "will generally be limited to freedom from restraint which … imposes atypical and significant hardship … in relation to the ordinary incidents of … life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Dietz v. Damas,* 932 F.Supp. 431, 454 (E.D.N.Y.1996). In other words, a state-created interest must have " 'real substance' " in order to merit procedural protection. *Sandin,* 515 U.S. at 478–84, 115 S.Ct. 2293 (quoting *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). " 'Ephemeral and insubstantial' " interests remain unprotected. *Tellier v. Fields,* 280 F.3d 69, 82 (2nd Cir.2000) (quoting *Meachum v. Fano,* 427

U.S. 215, 228, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)).

The Association eagerly points out that the Padavan Law contains mandatory language: the Commissioner "shall" sustain a municipality's objection to a proposed site if "the nature and character of the area in which the facility is to be based would be substantially altered." N.Y. Mental Hygiene Law § 41.34; *see also Jennings,* 90 N.Y.2d at 240–41, 660 N.Y.S.2d 352, 682 N.E.2d 953. However, the Commissioner's alleged deprivation of the interest which that cabined discretion creates is not "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Sandin,* 515 U.S. at 486, 115 S.Ct. 2293. In other words, the interest is not "sufficiently embraced within Fourteenth Amendment 'liberty' to entitle [the Association's members] to those minimum procedures" required by the Due Process Clause. *Wolff,* 418 U.S. at 557, 94 S.Ct. 2963.

### c. *Deprivation of Due Process*

██ The Association contends that the position, now adopted by the Court, that selection of the 68 East Concord Drive site would not disturb any protected property or liberty interests is a "straw man argument" that "simply evades [the Association's] fundamental complaint about the process by which the selection was made." (Pl.'s Opp. Mem. at 15.) In the words of the Association, the statute's "vagueness, which is part and parcel, and hand in hand with [its] arbitrary enforcement ... is concomitantly a denial of due process of law, depriving [the Association] of rights guaranteed by the Fourteenth Amendment." (Pl.'s Opp. Mem. at 14.)

██ Whatever the Association means by this language, it is incorrect if it means that it has a constitutional right to due process in the air. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of interest." *Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *BAM Historic Dist.,* 723 F.2d at 237; *Mehta,* 720 F.Supp. at 335 ("A right to a particular procedure cannot exist in a vacuum and must be linked to a right to life, liberty or property."). The Association does not claim a deprivation of life, and, as explained above, the Commissioner has not deprived its members of any cognizable property or liberty interests. *See Mehta,* 720 F.Supp. at 335; *Howell,* 1991 WL 66366, at *2. Therefore, because "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause," *Olim,* 461 U.S. at 250 n. 12, 103 S.Ct. 1741, any claim that the defendants have violated that clause by subjecting the Association's members to a sham process is dismissed.

### 3. *Fourteenth Amendment Equal Protection Clause*

██ The Association's last source for putative constitutional rights is the Equal Protection Clause of the Fourteenth Amendment, which provides that a state and its instrumentalities may not deny "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "At its core, equal protection prohibits the government from treating similarly situated persons differently." *Sound Aircraft Servs., Inc. v. Town of East Hampton,* 192 F.3d 329, 335 (2d Cir. 1999) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)); *see also Mehta,* 720 F.Supp. at 335. Thus, "[t]o state an equal protection claim, a plaintiff must charge a governmental officer 'not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation.'" *Brady v. Town of Colchester,* 863

F.2d 205, 216 (2d Cir.1988) (quoting *Burt v. City of New York*, 156 F.2d 791, 792 (2d Cir.1946)); *see also Goldstar Auto Sales, LLC v. Town of Halfmoon*, 69 F.Supp.2d 361, 366–67 (N.D.N.Y.1999).

 Here, the Association does not allege that the Commissioner deliberately treated its members differently than any other similarly situated persons when he declined to sustain the Town of Ramapo's objection. To the contrary, the Association states that its review of over one hundred reported cases has failed to reveal "a single case where the Commissioner has overturned a site selection." (Compl.¶ 28(d).) This failure to allege any class-based invidious discrimination is fatal to the Association's section 1983 equal protection claim. *See Mehta*, 720 F.Supp. at 335.

## II. *The Association's Motion to Amend the Complaint*

In response to the defendants' motion to dismiss, the Association moves to amend the complaint in two respects. First, it seeks to name the Commissioner in his individual capacity. Second, it seeks to substitute the Association's treasurer, Irwin Silberman, in the place of the Association as the named plaintiff. Both requests are denied as futile. Neither would alter the Court's conclusions that the OMRDD cannot be sued in federal court and that the complaint fails to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, the Association's motion to amend the complaint is denied, and the defendants' motion to dismiss the complaint is granted in its entirety against all defendants.