**Stanley CHANCE, Plaintiff,**

v.

**Lisa REED, Megan Lowney, Lisa Mazzeo and Operation Hope, Inc., Defendants.**

**Civil No. 3:06CV00970(AWT).**

United States District Court,
D. Connecticut.

March 19, 2008.

---

20. See, Response in Opposition (docket No. 36), Reply (docket No. 39) and Surreply (docket No. 42).

Stanley Chance, Bridgeport, CT, pro se.

Johanna G. Zelman, Michael J. Rose, Rose Kallor LLP, Hartford, CT, for Defendants.

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ALVIN W. THOMPSON, District Judge.

Pro se plaintiff Stanley Chance ("Chance") brings five claims against defendants Lisa Reed, Lisa Mazzeo, and Operation Hope of Fairfield, Inc.[1] In a Notice to Parties dated February 12, 2007, the court construed the plaintiff's complaint as asserting the following claims: (1) a claim pursuant to 42 U.S.C. § 2000a based on racial discrimination; (2) a claim pursuant to 42 U.S.C. § 2000d based on racial discrimination; (3) a claim pursuant to 42 U.S.C. § 1983 for a denial of procedural due process; (4) a claim pursuant to 42 U.S.C. § 1983 for denial of equal protection of the laws, based on a "class of one" theory; and (5) a conspiracy claim pursuant to 42 U.S.C. § 1985. The court instructed the plaintiff to advise the court if he intended to bring any additional claims, and the plaintiff has not advised the court of any additional claims. The plaintiff has filed a motion for summary judgment and defendants Lisa Reed ("Reed"), Lisa Mazzeo ("Mazzeo"), and Operation Hope of Fairfield, Inc. have filed a cross-motion for summary judgment. For the reasons set forth below, the plaintiff's motion is being

---

**1.** All claims against defendant Megan Lowney have been withdrawn by the plaintiff with prejudice. (*See* Doc. No. 60).

denied and the defendants' motion is being granted.

## I. FACTUAL BACKGROUND

Defendant Reed is a social worker at Operation Hope, a nonprofit organization receiving federal funding which provides services to the homeless and those at risk of becoming homeless. Operation Hope operates both an emergency shelter and a community kitchen. The plaintiff was referred to Operation Hope in August or September 2003. Reed met and began working with the plaintiff. In December 2003, the plaintiff began sending letters and emails to Reed, in which he professed his love for Reed. After unsuccessful attempts by Reed to address her concerns about the correspondence, and after receiving correspondence from Chance that Reed perceived to be increasingly threatening, Reed transferred Chance's case to another clinical social worker at Operation Hope.

Reed received further communications from Chance which she perceived as threatening, and she filed a complaint with the Fairfield Police Department on June 9, 2006. On June 9, 2006, a note was written in Operation Hope's log book indicating that the plaintiff was not allowed on the premises. In a letter dated June 13, 2006, Mazzeo, Operation Hope's clinical director, informed Chance that he was not allowed to use any of Operation Hope's services and gave him information regarding other places he could go to for such services.

Chance admitted that he wrote letters to Reed and explained that "Alicia Reed had sex with me and that's why I was writing the letters trying to get it again." (Def.'s Mem. Opp. Mot. Summ. J., (Doc No. 22),

Ex. A ("Chance Dep.") at 128). A police incident report dated June 9, 2006 states that "Chance was warned to have no further contact with Reed." (Memorandum of Law in Support of Defendants' Cross Motion for Summary Judgment (Doc. No. 72), at Ex. G). However, Chance appears to take the position that he was not aware of Reed's complaint until he arrived at Operation Hope on June 11, 2006, and the court accepts the plaintiff's version of events for purposes of this ruling.

In his complaint, Chance states that when he arrived at Operation Hope on June 11, 2006 to have lunch, he was not allowed on the premises. Chance alleges that the individual defendants, who are white, conspired to have him arrested because he is black. When asked, "[b]ut you weren't arrested; were you?", Chance responded, "[w]ell, that don't mitigate the circumstance, they wanted me arrested; didn't they?" (Chance Dep., at 126). Chance stated that "race played a factor" in the way he was treated, although he "[did not] believe [the defendants] are racists." (Chance Dep., at 80). Chance also claims that Reed once told him, "Black people are stupid." (Plaintiffs' Mem. Supp. Mot. Summ. J., (Doc. No. 40) ("Pl.'s Mem.") at 4). Chance further explained that "Reed had once remarked to the plaintiff, during a session when the plaintiff asked her how she felt about black people 'I don't really [feel] nothing but in my life experiences Black people are stupid, look at Genie' ". (Plaintiff's Local Rule 56(a)1 Statement of Material Facts Not in Dispute (Doc. No. 42), at ¶ 11). According to Chance, "Genie" is a co-worker of Reed's. *See id.* at n. 4.[2] In his memorandum, Chance also contends that Operation

---

**2.** The court notes that this discussion is contained in a memorandum of law and a statement of material facts and does not constitute evidence within the meaning of Fed.R.Civ.P. 56(e). However, in deference to the plaintiff's *pro se* status, the court has assumed that the plaintiff would be able to submit such information in proper form.

Hope knew of drug use by white clients and that one white client who died in his bed was taken to the hospital, while a black client would have been removed from the shelter. He also claimed that Madeleine Randall, a white woman, received help with her rent, while Yolanda Saunders, a black woman, was informed that Operation Hope did not offer that kind of assistance. (Pl's Mem., at 4–5). Chance submitted an affidavit from Yolanda Saunders averring that she was told that Operation Hope did not offer rent assistance, but that she was given a voucher to use the food pantry and was informed that she could have a bed in the shelter if she became homeless. Saunders stated that she is filing a discrimination lawsuit because she has learned that "Operation Hope has helped other people." (Saunders Aff. (Doc. No. 41), at ¶ 7).

Chance responded to the defendants' motion for summary judgment by submitting an affidavit in which he claimed to have been engaged in an "ongoing sexual relationship" (Chance Aff. (Doc. No. 94)) with Reed, which Reed denies. Assuming for purposes of this motion that Chance's statement is true, this point is immaterial.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." See Celotex Corp., 477 U.S. at 322, 106 S.Ct. 2548.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Donahue v. Windsor Locks Board of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319–20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S.Ct. 2505. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that

governs." *Id.* at 248, 106 S.Ct. 2505. Thus, only those facts that *must* be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. *See Howard v. Gleason Corp.,* 901 F.2d 1154, 1159 (2d Cir.1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *Del. & Hudson Ry. Co. v. Consol. Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. *Stern v. Trs. of Columbia Univ.,* 131 F.3d 305, 315 (2d Cir.1997) (quoting *W. World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," *Weinstock,* 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, ... [and] must come forward with specific facts showing that there is a genuine issue for trial." *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir.1993) (quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." *Weinstock,* 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted. The question then becomes whether there is sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party. *See Anderson,* 477 U.S. at 248, 251, 106 S.Ct. 2505.

■ Because the plaintiff in this case is proceeding *pro se,* the court must read the plaintiff's pleadings and other papers liberally and construe them in a manner most favorable to the plaintiff. *See Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). Moreover, because the process of summary judgment is "not obvious to a layman," *Vital v. Interfaith Medical Ctr.,* 168 F.3d 615, 620 (2d Cir.1999), the district court must ensure that a *pro se* plaintiff understands the nature, consequences and obligations of summary judgment. *See id.* at 620–621. Thus, the district court may itself notify the *pro se* plaintiff as to the nature of summary judgment; the court may find that the opposing party's memoranda in support of summary judgment provide adequate notice; or the court may determine, based on thorough review of the record, that the *pro se* plaintiff understands the nature of summary judgment.

*See id.* After reviewing the record, the court concludes that the plaintiff understands the nature, consequences and obligations of summary judgment. First, the plaintiff has had extensive experience as a litigant in federal court and also filed his own motion for summary judgment in this case. Second, the court clarified with the defendant at a hearing held on July 31, 2007 that the Affidavit of Stanley Chance (Doc. No. 84) was filed as part of his case, and the court informed the parties that it would treat that affidavit as being filed in response to the defendants' motion for summary judgment. Third, the plaintiff filed an additional Affidavit of Stanley Chance (Doc. No. 94) dated August 3, 2007 in response to further submissions made by the defendants following the July 31, 2007 hearing. Fourth, the plaintiff submitted a document stating that he "will not be filing any response to the defendants' motion for summary judgment." (Doc. No. 83). The plaintiff's submissions show that he understands summary judgment, but simply does not have evidence to withstand it. The plaintiff's submissions demonstrate that he is attempting to show that there are genuine issues of material fact, but although he has presented facts as to which there is a genuine dispute, there are no genuine issues of *material* fact.

## III. DISCUSSION

### A. § 1983 "Class of One" Equal Protection Claim

■ The defendants argue that all of the plaintiff's § 1983 claims must fail because none of the defendants are state actors. The court agrees. The plaintiff has pointed to no evidence that could support a conclusion that Operation Hope or its employees are state actors. The mere fact that Operation Hope receives federal and state funding and is organized as a § 503(c)(3) nonprofit organization under the Internal Revenue Code does not make any of the defendants a state actor. *See, e.g., Moglia v. Sullivan County Head Start, Inc.,* 988 F.Supp. 366, 367 (S.D.N.Y. 1997) (Head Start personnel decisions not 'under color of law' where "federal and state officials lack control of Head Start programs' personnel decisions adequate to render personnel actions in such programs 'under color of law' that are 'traditionally the exclusive prerogative' of the government nor have the 'symbiotic relationship' with the government necessary to be considered state actors") (citations omitted); *Kraft v. Yeshiva University,* No. 00 Civ. 4899(RCO), 2001 WL 1191003, at *3 (S.D.N.Y. Oct. 5, 2001) ("The mere fact that a university receives federal funding does not make the school or its employees state actors."). As the defendants point out, while private persons can act "under the color of state law," the plaintiff has produced no evidence to show that any of the defendants acted under color of state law.

■ Moreover, the court agrees with the defendants that Chance has failed to produce evidence of the existence of any "similarly situated" individual. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."); *Clubside, Inc. v. Valentin,* 468 F.3d 144, 159 (2d Cir.2006) ("We have held that class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."). Chance claims that he was similarly situated to "[e]very resident, every person who goes into Operation Hope," but he has

failed to present any evidentiary support for this contention. (Chance Dep. at 81).

## B. § 1983 Procedural Due Process Claim

As discussed in the preceding section, the plaintiff has failed to produce any evidence that could show that any of the defendants is a state actor and his § 1983 claims fail for this reason.

■■■ Moreover, to prevail on a procedural due process claim, a plaintiff must first show a deprivation of a constitutionally-protected property or liberty interest. *Narumanchi v. Board of Trustees of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir.1988). The plaintiff claims only that he has a liberty interest in the continued use of Operation Hope's services. A liberty interest may arise from either the due process clause or state law. *Rodriguez v. McLoughlin*, 214 F.3d 328, 337 (2d Cir. 2000). To establish a liberty interest based on state law, the plaintiff must show that the alleged "governmental action . . . deprived [him] of a right previously held under state law." *Paul v. Davis*, 424 U.S. 693, 708, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

> A state creates a protected liberty interest by placing substantive limitations on an official's discretion to deprive an individual of an otherwise unprotected liberty interest. Such interests, however, will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship . . . in relation to the ordinary incidents of . . . life. In other words, a state-created interest must have "real substance" in order to merit procedural protection. "Ephemeral and insubstantial" interests remain unprotected.

*Ramapo Homeowners' Association v. New York State Office of Mental Retardation and Developmental Disabilities*, 180 F.Supp.2d 519, 527–528 (S.D.N.Y.2002) (internal citations and quotation marks omitted). In this case, there is no state law that gives the plaintiff a liberty interest in the continued use of Operation Hope's services, nor does such an interest arise out of the due process clause.

■■■ The plaintiff has not claimed that he had a property interest in the continued use of Operation Hope's services, nor would he be able to establish that he had such a property interest. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The plaintiff has pointed to no statutory authority to show that he has a property interest in receiving the benefits of the federal and state funding provided to Operation Hope. Moreover, assuming *arguendo* that he has a property interest in receiving certain services, he has failed to produce evidence of a property interest in receiving services from Operation Hope specifically. This is not a situation where the plaintiff has been deemed by state or federal officials to be ineligible to receive a particular benefit given to individuals such as a Section 8 voucher. Thus, the court agrees with the defendants' argument that the plaintiff has failed to create a genuine issue as to whether he had an entitlement to receive the services offered by Operation Hope and its employees.

## C. § 1985 Conspiracy Claim

■■■ "Section 1985 applies to conspiracies of private individuals as well as state actors." *Bodkin v. Garfinkle*, 412 F.Supp.2d 205, 214 (E.D.N.Y.2006).

To state a cause of action under § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The statute itself provides no substantive rights; instead, it "provides a remedy for violation of the rights it designates." [*Great American Federal Savings & Loan Association v.*] *Novotny,* 442 U.S. [366] at 372, 99 S.Ct. [2345] at 2349 [60 L.Ed.2d 957 (1979) ]. . . . Section 1985(3) clearly provides a remedy for conspiracies to deprive persons of their rights under the United States Constitution. *See, e.g., United Bhd. of Carpenters v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (§ 1985(3) applies in case of public conspiracy to deprive persons of their rights under the first amendment); *Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (§ 1985(3) applies in case of private or public conspiracy to deprive persons of their rights under the thirteenth amendment). Less clear is the extent to which the statute remedies injuries resulting from private conspiracies to deprive persons or classes of persons of the equal protection of, or equal privileges and immunities under, federal statutory law or state law.

*Traggis v. St. Barbara's Greek Orthodox Church,* 851 F.2d 584, 586–87 (2d Cir. 1988). The "class of one" theory is insufficient to form the basis for a § 1985 action. *See, e.g., American Nat'l Bank and Trust Co. of Chicago v. Town of Cicero,* No. 01 C 1396, 2001 WL 1631871, at *12 (N.D.Ill.

2001). *See also Brown v. City of Oneonta, New York,* 221 F.3d 329, 341 (2d Cir.2000) ("The conspiracy must be motivated by racial animus."); *Storck v. Suffolk County Dept. of Social Services,* 62 F.Supp.2d 927, 940 (E.D.N.Y.1999) ("the discriminatory animus referred to must be based upon racial or other class-based motive"). Here, the plaintiff has produced no evidence that could show that there was a conspiracy to deprive him of his constitutional rights based upon his race. The plaintiff's testimony is that "race played a factor." (Chance Dep., at 80). However, the plaintiff offers only this conclusory statement; he offers no evidence that could show that any of the defendants' actions were motivated in any way by race. In addition, the plaintiff fails to point to any constitutional deprivation he has suffered and offers no evidence of any agreement by the defendants to deprive him of constitutional rights.

Moreover, the court agrees with the defendants' argument that the intracorporate doctrine also bars the plaintiff's claim. While it is possible for a conspiracy to exist "when the individual defendants are alleged to have been 'motivated by an independent personal stake in achieving the [organizations's] objective,'" the plaintiff has produced no evidence of such a situation. *Spector v. Board of Trustees of Community–Technical Colleges,* 463 F.Supp.2d 234, 251 (D.Conn.2006).

### D. 42 U.S.C. § 2000a Claim

■ The defendants argue that they are entitled to summary judgment on this claim because (1) the plaintiff failed to exhaust his administrative remedies; (2) Operation Hope is not a place of public accommodation; and (3) the plaintiff cannot satisfy the *McDonnell Douglas* test.

Section § 2000a–3(c) provides that where a state or local law prohibits the

practice, "no civil action may be brought ... before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority...." 42 U.S.C. § 2000a–3(c). *See also Macedonia Church v. Lancaster Hotel Ltd. Partnership,* 425 F.Supp.2d 258, 261 (D.Conn.2006) ("it appears the plaintiffs were required, pursuant to 42 U.S.C. § 2000a–3(c), to file a complaint with the [Pennsylvania] Commission more than 30 days prior to filing this action as a prerequisite to filing this action."); *Bilello v. Kum & Go, LLC,* 374 F.3d 656, 659 (8th Cir.2004) ("[s]ince the requirements of section 2000a–3(c) are jurisdictional ... these procedural prerequisites must be satisfied before we have jurisdiction over a section 2000a claim"). As the defendants point out, Conn. Gen. Stat. § 46a–64 prohibits discrimination in any place of public accommodation and Conn. Gen.Stat. § 46a–82 provides for the filing of complaints with the Connecticut Commission on Human Rights and Opportunities (the "CHRO") within 180 days after the alleged discriminatory act. The plaintiff has failed to show that he ever made such a filing with the CHRO, and it appears that the time to make such a filing has passed.

Because the plaintiff has failed to exhaust his administrative remedies, the court need not address the defendants' second and third arguments.

### E. 42 U.S.C. § 2000d Claim

 Courts apply the "same burden-shifting framework articulated in *McDonnell Douglas* to disparate treatment claims arising under ... 2000 (Title VI)." *Jackson v. University of New Haven,* 228 F.Supp.2d 156, 159 (D.Conn.

2002). Where the plaintiff does not offer direct evidence of discriminatory intent, the plaintiff must "first establish a prima facie case of discrimination." *Id.* at 160. Then, the defendant bears the burden of producing "a legitimate, nondiscriminatory rationale for its actions." *Id.* "[I]f the defendant does offer a non-discriminatory reason for its decision, the burden again shifts to the plaintiff to show that the defendant's stated reason is a mere pretext for discrimination." *Id.* In order for the plaintiff to make a prima facie showing of discrimination to satisfy the first prong of the *McDonnell Douglas* framework, the "plaintiff must show (1) membership in a protected class, (2) qualification for the employment, (3) an adverse employment decision, and (4) circumstances that give rise to an inference of discrimination." *Id. See also Koumantaros v. City University of New York,* No. 03 Civ. 10170(GEL), 2007 WL 840115, at *8 (S.D.N.Y. Mar. 19, 2007) ("Plaintiff may show a *prima facie* case under Title VI through direct evidence of discriminatory conduct, or where direct evidence is unavailable, as it is here, through indirect evidence, by demonstrating that: (1) she is a member of a protected class; (2) she suffered an adverse action in pursuit of her education by defendant; (3) she was treated differently from similarly situated students who were not members of the protected class; and (4) she was qualified to continue in her educational pursuit.").

While Chance is a member of a protected class because of his race, he has failed to make any showing that there were similarly situated individuals who were treated differently. Chance points to two examples in support of his contention that Operation Hope treated white and black clients differently.[3] However, even assuming *ar-*

---

**3.** First, he claims that black and white drug users would be treated differently and states

that one white client actually died in the shelter from a drug overdose while black

*guendo* that Chance produced evidence of these two situations where black clients were or would be treated differently from similarly situated white clients, Chance has still failed to produce evidence that someone who engaged in the type of conduct in which he admits engaging, or other conduct that was equally offensive or harassing, was treated differently.[4] Nor does Chance's statement that Reed made a derogatory comment to him about black people constitute such evidence, as it is undisputed that Mazzeo, the clinical director, was the individual who informed Chance that he would not be allowed to use Operation Hope's services.

In addition, the court agrees with the defendants that there can be no individual liability under 42 U.S.C. § 2000d. *See, e.g., Albra v. Advan, Inc.,* 490 F.3d 826, 831 (11th Cir.2007) ("courts generally have concluded that Title VI precludes individual liability"); *Kelly v. Rice,* 375 F.Supp.2d 203, 208 (S.D.N.Y.2005) ("Title VI prohibits exclusion from participation, or discrimination, in federally assisted programs. The proper defendant in such a case is the entity that receives federal financial assistance, not an individual."); *Jackson v. University of New Haven,* 228 F.Supp.2d 156, 158 n. 4 (D.Conn.2002) ("Even if the plaintiff had asserted his Title VI and VII claims against defendant Chin, she would not have been a proper defendant under either title of the Civil Rights Act.").

## IV. CONCLUSION

For the reasons set forth above, the defendants' Cross Motion for Summary Judgment (Doc. No. 71) is hereby GRANTED, and the Plaintiffs' Motion for Summary Judgment (Doc. No. 39) is hereby DENIED. Judgment shall enter in favor of defendants Lisa Reed, Lisa Mazzeo, and Operation Hope of Fairfield, Inc. on all the claims in the plaintiff's complaint. The defendants' Motion to Dismiss (Doc. No. 52) is hereby DENIED as moot.

The Clerk shall close this case.

It is so ordered.

---

clients would be thrown out for suspicion of drug use. Second, he points to an example where Saunders, a black woman, was told that Operation Hope did not offer rental assistance, and offers Saunders' affidavit in support of this contention. Chance claims that Randall, a white woman, was given rental assistance.

4. For examples of the inappropriate conduct that Chance exhibited towards Reed, *see* Def.'s L.R. 56(a)(1) Statement, ¶¶ 37–41, 44–53.